Charles B. Hughes v. Commissioner.
Hughes v. Commissioner
Docket No. 51479.
United States Tax Court
T.C. Memo 1956-150; 1956 Tax Ct. Memo LEXIS 145; 15 T.C.M. (CCH) 747; T.C.M. (RIA) 56150; June 28, 1956
*145 Held, that the deficiency determined for each of the years 1944 and 1945 is, in part, due to fraud with intent to evade tax, within the meaning of section 293(b) of the Internal Revenue Code (1939). William G. O'Neill, Esq., and James E. Markham, Jr., Esq., for the respondent. PIERCE Memorandum Findings of Fact and Opinion PIERCE, Judge: The respondent determined income tax deficiencies and additions to tax, in respect of the petitioner, as follows: Additions to
Tax for Un-
Additions
derestimate
to Tax
of Estimated
for Fraud
Tax (Sec.
Year
Deficiencies
(Sec. 293(b))
294(d)(2))
1944
$ 5,485.33
$ 3,228.40
$ 393.58
1945
34,809.51
17,404.76
2,081.60
1946
2,440.19
None
None
Respondent now concedes that the determinations made in respect of the year 1945 should be reduced to the following amounts: Deficiency, $19,219.50; addition to tax under section 293(b), $9,609.75; addition to tax under section 294(d)(2), $1,146.19. At the hearing, there was no appearance by or on behalf of the petitioner; and a motion of respondent for approval of the determined deficiencies and the additions to tax under *146 section 294(d)(2), as reduced by the above-mentioned concession, was granted. Such action will be reflected in our decision. The sole remaining issue is whether any part of the deficiency for each of the years 1944 and 1945 is due to fraud with intent to evade tax. Findings of Fact The petitioner, Charles B. Hughes, filed an individual income tax return for each of the years 1944, 1945, and 1946, with the collector of internal revenue for the twenty-first district of New York, at Syracuse. In 1942 petitioner entered the employ of the Barr Typewriter Corporation, a New York corporation, as its general manager. About two years later, in 1944, petitioner, together with five other individuals, Herman Cohen, Ben Cohen, Morton Kowalsky, Albert James and Walter T. Smith, purchased the business of said corporation, in approximately equal shares; and they changed the name to Barr Manufacturing Corporation (hereinafter called the Barr Corporation). The amount paid by petitioner for his interest in the corporation was $5,000. The two Cohens and Kowalsky took little part in the operation of the business - a function that was performed principally by James, Smith and the petitioner. James' *147 duties were largely concerned with traveling, in connection with expediting production and selling products. Smith and petitioner had supervision of the plant. Petitioner also had charge of the corporation's financial arrangements; and from the time the business was purchased until some time in 1945, he was both general manager and executive vice-president. Thereafter, throughout the years 1945 and 1946, he was both general manager and president. Stimulated by the demands of war production, the business of the Barr Corporation increased greatly. In the early days of the war, it was a subcontractor for the Bendix Aviation Corporation, and later it became a prime contractor for the ordnance depot in the Rochester Ordnance District. As the war progressed, its sales increased from somewhere between 25 and 50 thousand dollars per month to about a million dollars per month; and the number of its employees increased from 50 to about 600. It paid income taxes in substantial amounts for all years here involved. There is no evidence of any dividend ever having been paid by the corporation, or of any having been received by petitioner from that corporation. In June 1944 petitioner and Smith, *148 realizing that the Barr Corporation's defense work might soon decline, purchased in equal shares a patent, known as the Poole clock patent, together with an inventory of parts at a cost of $3,500; and, in November of the same year, they sold these to the Barr Corporation for $5,600. At about the same time, printed invoice forms were prepared in the name of "The Poole Company," which forms indicated that such company was located at Ithaca, New York. And, in December 1944, the petitioner, together with James and Smith, opened a checking account in the name of "The Poole Company" at the Auburn Trust Company in Auburn, New York, on which each was an authorized signatory. Actually, "The Poole Company" had no substance. There was no office or plant of such a company, such as was indicated on the above-mentioned printed invoices; no income tax return was ever filed for such a company or by the above-named individuals, in respect of the sales of merchandise hereinafter mentioned purported to have been made in the name of such a company and there are no records relating to such a company; except the abovementioned checking account at the Auburn bank, which James, Smith and petitioner established. *149 Petitioner claimed that he, Smith and James had contemplated the formation of a corporation of that name, but no such corporation was ever organized. During the years 1944 and 1945, checks of the Barr Corporation totaling approximately $97,000, which were signed by petitioner and Smith, were issued in the name of "The Poole Company," and paid against invoices prepared in that name for materials furnished; and these checks were deposited in the above-mentioned checking account at the Auburn bank. Actually, no materials were furnished to the Barr Corporation in accordance with said invoices. Also, in 1945, checks of the Barr Corporation totaling about $62,000, which likewise were signed by petitioner and Smith, were issued in the name of "The Poole Company," and paid as a loan to such company; and these checks also were deposited in said checking account at the Auburn bank. The moneys so deposited in the Auburn bank account, totaling approximately $159,000, were from time to time in the years 1944 and 1945 withdrawn on checks signed by two of the above-named individuals, who were usually petitioner and either James or Smith; and the same were used or distributed as follows: $62,000.00
returned to the Barr Corporation
in repayment of the above-men-
tioned "loan."
$60,000.00
used by James, Smith, and peti-
tioner to purchase the shares of
stock of the Barr Corporation, held
by Herman Cohen and Ben Cohen.
This stock was purchased in their
individual names, and was not
retired by the corporation.
$ 3,218.00
distributed to two employees of the
Barr Corporation, one of whom
was the brother of petitioner.
$34,015.88
distributed to James, Smith, and pe-
titioner, of which $10,924.36 was
received by petitioner and de-
posited in his personal bank ac-
count.
*150 The respondent, in his notices of deficiency herein, determined that, of the sum of $10,924.36 so received by the petitioner, $7,086.03 constituted income to him in the year 1944 (representing $1,745 actual distributions to petitioner from the Auburn bank account, and $5,341.03 constructive receipts, consisting of petitioner's one-third share of the unwithdrawn balance in said account at the end of the year); and that $3,838.33 of said sum constituted income to petitioner in 1945 (representing $9,179.36 actually distributed to petitioner from the Auburn bank account in that year, less the above-mentioned 1944 constructive receipt). Petitioner did not report any portion of any of the above-mentioned amounts in his income tax return for either 1944 or 1945. In 1945 the Barr Corporation issued other checks totaling $18,848.60 to "Universal Design and Consulting Service" (hereinafter called "Universal"), which were signed by petitioner and Smith, in payment of invoices presented in the name of Universal for services stated to have been rendered by such a company. These checks were deposited in a checking account at the Merchants National Bank and Trust Company in Syracuse, New York, *151 which James, Smith and petitioner opened in the name of Universal, and from which these individuals were authorized to make withdrawals. Actually, "Universal Design and Consulting Service" was merely the name for another fictitious company. No services were rendered by such a company; there was no office of such a company in the office building which the above-mentioned invoices described to be the place of business of such company; no income tax return was filed on behalf of such a company, nor did the above-named individuals report any income from the services purported to have been rendered; and there are no records for such a company, except the above-mentioned checking account, which James, Smith and petitioner established. In October 1945, the total balance in the Universal checking account was withdrawn and distributed to James, Smith and petitioner in equal shares. Petitioner's share was $6,282.86; and this was deposited in his personal bank account. Petitioner did not report any portion of this amount on his 1945 income tax return. In 1946 and 1947, when the Barr Corporation's accounts with "The Poole Company" and "Universal Design and Consulting Service" were being examined *152 by an internal revenue agent, petitioner instructed one of the accounting employees of the Barr Corporation to "steer" the revenue agent away from the Poole and Universal transactions. Also, when this accounting employee asked petitioner at that time for an explanation as to the nature of "The Poole Company" and "Universal Design and Consulting Service," petitioner told him that the arrangement for "The Poole Company" was made so that he and his associates could buy out the Cohens; and that Universal was something which he, James and Smith were dividing up among themselves. At least part of the deficiency for each of the years 1944 and 1945 is due to fraud with intent to evade tax. Opinion The issue here is whether any part of the deficiency for either of the years 1944 or 1945 is due to fraud with intent to evade tax, within the meaning of section 293(b) of the Internal Revenue Code (1939). The burden of proof in respect of such issue is on the respondent. We are convinced, after examining all the evidence, that petitioner's failure to report on his returns for 1944 and 1945, respectively, the income which he received during those years from distribution of the accounts maintained *153 in the names of "The Poole Company" and "Universal Design and Consulting Service," was willful, and pursuant to an attempt on his part to conceal income, defeat the income tax statute, and evade tax. Cf. Fred N. Acker, 26 T.C. - (April 17, 1956). Such failure was part of a fraudulent scheme, which included the withdrawal of funds from the Barr Corporation through the use of spurious invoices, the depositing of such funds in accounts established in the names of fictitious companies, the distribution of portions of such funds to petitioner and his associates, and an attempt by petitioner to divert respondent's agent from examining the transactions. Each of the deficiencies here involved is due, in part, to petitioner's failure to report such income; and such deficiencies have not been contested. It is our opinion that the respondent has borne his burden of proof. We hold, and have heretofore found as a fact, that at least part of the deficiency for each of the years 1944 and 1945 is due to fraud with intent to evade tax, within the meaning of the above-mentioned statute. In our decision, effect will be given to the concession of the respondent respecting the year 1945. Decision *154 will be entered for the respondent.